UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABEL VALENCIA, | ) Case No.: 1:12-cv-01446-AWI-SAB (PC) |
| Plaintiff, | ) ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS IDENTIFIED HEREIN |
| v. | |
| CONNIE GIPSON, et al., | |
| Defendants. | ) THIRTY-DAY DEADLINE |

Plaintiff Abel Valencia is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated the instant action on September 4, 2012.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## PLAINTIFF'S COMPLAINT

Plaintiff names George Giurbino, Connie Gipson, S. Hubbard, D. McClure, M. Buechner, J. Evangelista, R.S. Lambert, G. Williams, D.J. Ruiz, S. Pina, J.C. Garcia, A. Mayo, S. Johnson, M. Lopez, T. Marsh, and Does 1-50, as Defendants in this action.

On April 20, 2011, Plaintiff was placed in administrative segregation by Defendant M. Lopez pending an investigation into his alleged safety concerns. Plaintiff refused to sign a general chrono dated April 13, 2011, because he did not have any safety concerns. Plaintiff's case was transferred to Lieutenant D. J. Ruiz for investigation. On this same date, Plaintiff appeared before Committee members and he was informed he was being retained in administrative segregation pending completion of an Institutional Gang Investigation (IGI). Plaintiff was not allowed to appear at a hearing regarding his retention in administrative segregation.

On April 24, 2011, Defendant Ruiz placed Plaintiff in a holding cell for a formal interview regarding the possible safety concerns. Plaintiff informed Ruiz that he did not have any safety concerns and he had no problem being housed with another inmate. Plaintiff exercised his right to

remain silent regarding an incident which took place on April 23, 2011.  In retaliation, Ruiz searched Plaintiff's cell and tossed around his property.  Plaintiff was later advised that he was being considered for validation as a gang member.

On May 2, 2011, Defendants Ruiz and A. Mayo went to Plaintiff's cell to take photographs for use in the validation process.

On May 3, 2011, Defendants Ruiz, Cano, and Sanchez, approached Plaintiff's cell to re-take the photographs.  After completion of the photographs, Defendants Cano and Sanchez grabbed Plaintiff by the forearms and he was forcefully taken to the Sergeant's office.  He was forced into the office and Sanchez maintained a grip on his right forearm.  Defendant Ruiz stood in front of Plaintiff and while he stated he did not any safety concerns, Ruiz responded "I don't care about that that's not why I'm here."  Plaintiff again indicated that he had nothing to say to them and requested to return to his cell, to which Ruiz stated, "I don't care whether you have nothing to say your['re] going to stand here and listen to me whether you like it or not."  Then a sergeant along with Ruiz stated we will "see how you'll like it when we send officers to go raid your sister's house with guns."

On May 17, 2011, Defendants Ruiz, Sergeant J.C. Garcia, and an unknown IGI officer, served Plaintiff with a validation package dated May 17, 2011.  The validation was based on seven separate pieces of evidence, including several confidential memorandums and gang chronos.

On May 17, 2011, prior to interviewing Plaintiff, Defendants D.J. Ruiz and J.C. Smith concluded there was sufficient information in Plaintiff's prison file to validate him as a gang associate.  An interview was subsequently conducted between Plaintiff and Defendants Ruiz and A. Mayo; however, the interview only involved providing Plaintiff a copy of the findings.

On May 18, 2011, Defendants Ruiz and Garcia and another unknown IGI correctional officer, approached Plaintiff's cell door and indicated they were there to conduct an interview and consider Plaintiff's written rebuttal.  However, because Plaintiff was not assigned a staff assistance or investigative employee, he was never provided a hearing regarding his placement in administrative segregation.  Plaintiff's written rebuttal was never considered, and Defendant Ruiz told Plaintiff we "will see how you like it when you['re] validated and I'll make sure you['re] kept on single cell status while you['re] in the SHU validated."  Plaintiff is currently housed as single cell status because Ruiz

3

fabricated a confidential memorandum dated May 3, 2011, which indicates that Plaintiff has safety concerns regarding the Mexican Mafia ("EME") prison gang.

On May 25, 2011, Plaintiff appeared at another classification committee review and it was decided that he could remain retained in administrative segregation pending confirmation of the gang associate label. Defendant S. Johnson refused to consider Plaintiff's rebuttal evidence. It was falsely stated that an administrative review was conducted on May 20, 2011, by Defendant Captain R.C. Garcia.

On July 20, 2011, Plaintiff requested to review his central file.

On July 21, 2011, Plaintiff appeared for another classification committee review by Defendant S. Hubbard. It was determined that Plaintiff would be retained in administrative segregation with a notation that due process violations had taken occurred.

On July 28, 2011, Defendant S. Hubbard found a due process violation regarding his validation package because Plaintiff was prevented from submitted his written rebuttal. Nonetheless, Plaintiff was retained in administrative segregation.

To date, Plaintiff has not received a necessary hearing regarding his placement in segregated housing, nor has he been provided an investigative employee or staff assistance. Instead, it has been noted that Plaintiff refuses to take advantage of the due process safeguards.

On August 8, 2011, Plaintiff filed an administrative appeal. On August 26, 2011, the appeal was investigated by an unknown IGI correctional officer.

On September 1, 2011, Defendant A. Mayo went to Plaintiff's cell and began reading from a confidential memorandum and gave him more validation information, stating "refute that."

On September 6, 2011, Defendant A. Mayo visited Plaintiff's cell indicating he wished to collect Plaintiff's rebuttal statement. Plaintiff asked Mayo why the gang validation information had changed, and Mayo denied any changes.

On September 9, 2011, another gang validation review was conducted by Defendants J. Evangelista and G. Williams. An entirely new validation package was ordered to be prepared.

///

///

4

1    Plaintiff was never advised of the existence of the seven items relied upon to initially validate
2  him as a gang associate, and he was never issued a rules violation involving gang activity.  The
3  confidential memorandums have all been fabricated by the Defendants.

4    On December 29, 2011, another classification review was conducted, and Defendant J.
5  Cavazos imposed an indeterminate term in the Security Housing Unit (SHU).  However, due to
6  another an error in the validation process, Plaintiff appeared for another classification review and he
7  was again imposed an indeterminate SHU term.  Plaintiff requested double cell status but it was
8  denied unless he provided information regarding the incident that took place on April 13, 2011.

9    As relief, Plaintiff requests a declaratory judgment, preliminary and permanent injunction,
10 compensatory and punitive damages, costs of suit, trial by jury, and any other relief the Court deems
11 just.

## III.

## DISCUSSION

### A.    Linkage Requirement

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  To state a claim, Plaintiff must demonstrate a link between actions or omissions of each named defendant and the violation of his rights; there is no *respondeat superior* liability under section 1983.  Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1949; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

### B.    Doe Defendants

"Doe" defendant liability must also be properly alleged.  A plaintiff may use "Doe" designations to refer to defendants whose names are unknown; however, he must number them in the complaint, e.g., "John Doe 1," "John Doe 2," so that each numbered John Doe refers to a different specific person.  Plaintiff also must identify how each such named Defendant, including those named

as Doe, is liable for a constitutional violation. Dempsey v. Schwarzenegger, No C-09-2921 JSW (PR), 2010 WL 1445460, *2 (N.D. Cal. Apr. 9, 2010).

In the complaint, Plaintiff merely lists Doe Defendants 1-50, but fails to link any of these Doe Defendants to alleged constitutional violations.

### C. Supervisory Liability

Plaintiff contends that Defendants George Giurbino, Director of California Department of Corrections and Rehabilitation and Connie Gibson, Warden at Corcoran State Prison failed to properly train her subordinate officers to prevent them from maintaining a pattern of retaliation and harassment.

Under section 1983, Plaintiff must prove that the defendants holding supervisory positions personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Iqbal, at 1948-49. A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff's complaint is devoid of any allegations supporting the existence of a supervisory liability claim against Director Giurbino and Warden Gipson. The only basis for such a claim would be respondeat superior, which is precluded under section 1983.

### D. Inmate Appeals Process

Plaintiff contends that Defendants J.C. Garcia, S. Pina, J. Cavazos, R. Davis, and J.D. Lazano refused to properly evaluate his inmate appeals by reversing his gang validation status.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his

appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Accordingly, Plaintiff fails to state a claim against the above-mentioned defendants for the processing and/or handling of his inmate appeal.

### E. Retaliation

Plaintiff alleges that Defendants have intentionally retaliated against him for exercising his First Amendment right and refusing to provide them information regarding an incident that took place on April 13, 2011. In support of this claim, Plaintiff points to the fact that after he exercised his right to remain silent, Defendant Lieutenant D.J. Ruiz stated "so you['re] one of those guys." In retaliation, Defendant Ruiz searched Plaintiff's cell and prepared a gang validation package based on false confidential information. During the initial interview by Ruiz, Plaintiff was continuously intimidated and subjected to verbal assaults.

Viewing Plaintiff's allegations liberally, he states a cognizable claim for retaliation against Defendant Lieutenant D.J. Ruiz. However, Plaintiff is advised that verbal harassment in and of itself and by any defendants fails to state a cause of action under § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) ("[V]erbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.) (internal citations and ellipsis omitted).

### F. Due Process Challenges to Gang Validation Procedure

Under California regulations, the validation of a prisoner as a gang member or associate must be based upon three or more independent "source items of documentation" that are "indicative of" actual membership" or "association with" validated gang members or associates. Cal. Code Regs., tit. 15, § 3378(c)(3), (4). At least one of the source items must "be a direct link to a current or former validated member or associate of the gang, or to an inmate/parolee or any person who is validated by the department within six (6) months of the established or estimated date of activity identified in the evidence considered." Id., § 3378(c)(4). An inmate who is the subject of a gang validation investigation must be informed of each source items and provided all non-confidential information, not less than 24 hours before the inmate is provided an interview, and an opportunity to be heard. Id., § 3378(c)(6)(B), (C). The interview must be documented and include a record of the inmate's opinion concerning each source items. Id., § 3378(c)(6)(D). The inmate's mental health status and need for

staff assistance must be evaluated and, if necessary, accommodated prior to the interview." Id., § 3378(c)(6)(F).

However, an inmate's gang validation and related transfer to security placements will meet federal due process requirements if the inmate is provided only notice of the charges and evidence against him, an informal hearing with the opportunity to present his views, and "some evidence" supporting the decision. Bruce v. Ylst, 351 F.3d 1283, 1287-1288 (9th Cir. 2003). "California's policy of assigning suspected gang affiliates to the Security Housing Unit is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates. Although there are some minimal legal limitations, the assignment of inmates within the California prisons is essentially a manner of administrative discretion." Munoz v. Rowland, 104 F.3d at 1098 (citation omitted). Thus,

> [W]hen prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process only requires the following procedures: Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views.

Toussaint v. McCarthy, 801 F.2d 1080, 1100-1101 (9th Cir. 1986) (fn omitted).

Plaintiff's complaint alleges that Defendants Lieutenant Ruiz, A. Mayo, J.C. Garcia, unknown IGI officer, J.C. Smith, and S. Johnson, participated in the initial and subsequent decisions and process to validate Plaintiff by depriving him of his federal due process rights. Plaintiff states a cognizable due process claim as to the above-named Defendants based on the allegations that he was not afforded a hearing and opportunity to present his views to the critical decision makers concerning his validation and related security placement, and the determination is not based on "some evidence" to support the source items that were relied upon to validate him as an EME associate. However, Plaintiff's complaint does not state a cognizable claim as to any of the other named defendants.

**G.    Equal Protection**

Plaintiff contends that Mexican inmates are placed in the SHU at a grossly disproportionate rate in relation to their presence in the general population at Corcoran State Prison.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted). A plaintiff alleging an equal protection claim under 42 U.S.C. § 1983 based on race or other suspect classification "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." See Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998). In addition, the claim must be rejected if the prison regulation or practice claimed to have infringed on the inmate's constitutional rights is "reasonably related to legitimate penological interests." See Turner v. Safley, 482 U.S. 78, 89 (1987); see also Washington v. Harper, 494 U.S. 210, 223-225 (1990) (standard of review adopted in Turner applies in all circumstances in which needs of prison administration implicate constitutional rights, including when the constitutional right claimed to have been infringed is fundamental or a suspect class is involved.)

Plaintiff is advised that California's process of identifying suspected gang members and associates and confining them in the SHU consistently has been found by the Ninth Circuit to serve legitimate penological interests. See, e.g., Bruce v. Ylst, 351 F.3d at 1289 ("It is clear … that prisons have a legitimate penological interest in stopping prison gang activity."); Munoz v. Rowland, 104 F.3d 1096 (9th Cir. 1997) ("California's policy of assigning suspected gang affiliates to the SHU is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates."); see also Gamez v. Gonzales, 481 Fed. Appx. 310, 310 (9th Cir. 2012) (observing that "prison administrators have a rational basis for segregating validated gang associates from the general prison population.")

In Castro v. Terhune, 713 F.3d 1304 (9th Cir. 2013), the Ninth Circuit recently rejected a "void-for-vagueness" challenge to the California regulations governing the gang validation procedures. The Ninth Circuit also has found that California's periodic review procedure comports with due process. See Torres v. Cate, 501 Fed. Appx. 662, 662-663 (9th Cir. 2012); Toussaint v. McCarthy, 801 F.2d 1080, 1101 (9th Cir. 1986) (while periodic review of inmate's segregated confinement is necessary, prison officials are not required to allow additional evidence or statements), abrogated in part on other grounds in Sandin v. Conner, 515 U.S. 472 (1995).

9

California's gang validation procedures are not based on race; they are based on gang membership. Because the gang validation procedures in themselves are race neutral, Plaintiff can only state an equal protection claim under a theory of disparate treatment. For a disparate impact claim, Plaintiff has to allege: (1) that similarly situated non-Hispanic inmates were not validated; and (2) that the validation methods were motivated by a discriminatory purpose. See Village of Arlington v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977); McLean v. Crabtree, 173 F.3d 1176, 1185 (9th Cir. 1999).

Plaintiff has not sufficiently alleged either prong. First, Plaintiff fails to link any of the named defendants to any specific actions which alleged violated his right to equal protection of the law. Second, Plaintiff merely alleges that he has been repeatedly asked where he is "Northern," "Southern," or "Border Brother" from Mexico, which in insufficient to state an equal protection claim based on his gang validation.

### H.   Cruel and Unusual Punishment

Plaintiff contends he was kept in the Administrative Segregation Unit (ASU) for eleven months pending his gang validation due to the defendants mishandling his validation process, and Plaintiff is now required to stay in the SHU until he paroles. Plaintiff is forced to remain on single-cell status, even though he had previously been double-cell status for his entire thirteen years of incarceration. Plaintiff is subjected to severe physical and mental pain and suffering. He is required to spend twenty-two hours in his cell and is only allowed to leave his cell to go to outside cages. Plaintiff suffers frequent headaches, shortness of breath, exhaustion, insomnia, and anxiety attacks.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of

a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The placement and retention of a plaintiff in segregated housing, even for an indeterminate period of time, does not in and of itself implicate the Eighth Amendment. Toussaint v. Yockey, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984). Indeed, Plaintiff's contention that his temporary placement in the ASU and indefinite placement in the SHU imposes disproportionate punishment on him is legally insufficient to state an Eighth Amendment claim because the Ninth Circuit has held that "administrative segregation … is within the terms of confinement ordinarily contemplated by a sentence." See Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) (holding that conditions associated with administrative segregation, such as confinement in a single cell for most of the day, did not violate the Eighth Amendment); see also Perkins v. Crum, 476 Fed. Appx. 136, at *1 (9th Cir. 2012) (affirming dismissal of Eighth Amendment claim directed to conditions of confinement in SHU); Pina v. Scavetta, 467 Fed. Appx. 605, at *1 (same); Ruiz v. Cate, 436 Fed. Appx. 760, 761 (9th Cir. 2011) (affirming dismissal of prisoner's Eighth Amendment claim that his SHU sentence was disproportionate to his conduct). In sum, Plaintiff fails to allege that he suffered a "sufficiently serious" deprivation, or that any named Defendants acted with a sufficiently culpable state of mind to state a claim for violation of the Eighth Amendment.

///

///

**I.     First Amendment**

Plaintiff alleges that Defendants have violated his First Amendment rights by taking actions that interfere with his constitutional rights of free association and speech.

Prison regulations that impinge upon First Amendment rights are valid if they are reasonably related to legitimate penological interests, such as prison safety. See, e.g., Shaw v. Murphy, 532 U.S. 223, 229 (2001); Turner v. Safly, 482 U.S. at 89; Stefanow v. McFadden, 103 F.3d 1466, 1472 (9th Cir. 1996).  When considering a claim based on a prison rule or regulation restricting a prisoner's First Amendment rights, the Court applies the factors set forth in Turner v. Safley, 482 U.S. at 89.  The prison rule or regulation "must be found reasonable in light of four factors: (1) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bear on the reasonableness of the regulation)." Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008) (citing Turner, 482 U.S. at 89-90.)

As noted above, California's process of identifying suspected gang members and associates and confining them in the SHU consistently has been found by the Ninth Circuit to serve legitimate penological interests. See, e.g., Bruce, 351 F.3d at 1289 ("It is clear … that prisons have a legitimate penological interest in stopping prison gang activity."); Munoz, 104 F.3d at 1098 ("California's policy of assigning suspected gang affiliates to the SHU is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates."). Because prison regulations which allow officials to determine inmates' housing assignments and conditions based on their gang affiliation are reasonably related to a legitimate penological interest, Plaintiff's First Amendment challenges fails.

**IV.**

**CONCLUSION AND ORDER**

Plaintiff's complaint states a cognizable claim against Defendant D. J. Ruiz for retaliation and Defendants D.J. Ruiz, A. Mayo, J.C. Garcia, unknown IGI officer, J.C. Smith, and S. Johnson for due

process violations. Plaintiff has not sufficiently alleged facts for any other claims against any of the other named Defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claim for retaliation against Defendant D.J. Ruiz, and claim for due process violations against Defendants D.J. Ruiz, A. Mayo, J.C. Garcia, unknown IGI officer, J.C. Smith, and S. Johnson, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and Defendants, and will forward Plaintiff six (6) summons and six (6) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly,

550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint. Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff must either:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, or

    b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendant D. J. Ruiz for retaliation and Defendants D. J. Ruiz, A. Mayo, J.C. Garcia, unknown IGI officer, J.C. Smith, and S. Johnson for due process violations.

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: **November 14, 2013**

_____
UNITED STATES MAGISTRATE JUDGE