UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABEL VALENCIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CONNIE GIPSON, et al.,<br><br>　　　　Defendants. | Case No.: 1:12-cv-01446-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 46] |

Plaintiff Abel Valencia is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

This action is proceeding against Defendants Johnson, Ruiz, Smith, Garcia and Mayo for due process violations relating to the validation and the security housing unit placement of Plaintiff, and against Defendant Ruiz for retaliation in searching Plaintiff's cell after Plaintiff denied any safety concerns regarding his cell placement and exercise of his right to remain silent.

On December 16, 2014, Defendants filed a motion for summary judgment relating to exhaustion of the administrative remedies. Plaintiff filed an opposition on January 28, 2015. Defendants filed a reply on February 2, 2015, and Plaintiff filed a surreply on February 23, 2015.

///

///

///

# I.

# DISCUSSION

### A.   Filing of Surreply

Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired. Local Rule 230(*l*). The Court generally views motions for leave to file a surreply with disfavor. Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a surreply. See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

In this instance, Defendants did not raise new arguments in their reply brief, Plaintiff did not seek leave to file a surreply, and his arguments therein do not impact the Court's analysis. Accordingly, Defendants' motion to strike Plaintiff's surreply (ECF No. 59) is GRANTED.

### B.   Motion for Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d

1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### C. Exhaustion under the Prisoner Litigation Reform Act

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life, Porter v. Nussle, 435 U.S. 516,

532 (2002).

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendant has the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies is subject to a motion for summary judgment in which the Court may look beyond the pleadings. Albino, 747 F.3d at 1170. If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice. Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare. Cal. Code Regs. tit. 15, § 3084.1. Prior to 2011, the process was initiated by submitting a CDC Form 602 describing the problem and the action requested, tit. 15, § 3084.2(a), and appeal had to be submitted within fifteen working days of the event being appealed or of the receipt of the unacceptable lower level decision, tit. 15, § 3084.6(c). Up to four levels of appeal may be involved, including the informal level, first formal level, second formal level, and third formal level, also known as the Director's Level. Tit. 15, § 3084.5. In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); McKinney, 311 F.3d at 1199-1201. On January 28, 2011, the inmate appeals process was modified and limited to three level of review with provisions allowing the first level to be bypassed under specific circumstances. Cal. Code Regs. tit. 15, § 3084.7.

"[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Jones v. Bock, 549 U.S. 199, 219 (2007). "The level of detail necessary in a grievance to comply with the grievances procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. In California, the courts have previously found that CDCR guidelines do not need to identify the defendants by name because the proper form and CDCR regulations do not require identification of specific individuals. See, e.g., Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).

4

However, effective January 28, 2011, the regulations require inmates to identify the staff members involved, and provide as follows:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue.  To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  If the inmate or parolee does not have the requested identifying information about the staff member(s), he or shell shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2011).

### D.     Allegations of Complaint

On April 20, 2011, Plaintiff was placed in administrative segregation by Defendant M. Lopez pending an investigation into his alleged safety concerns.  Plaintiff refused to sign a general chrono dated April 13, 2011, because he did not have any safety concerns.  Plaintiff's case was transferred to Lieutenant D. J. Ruiz for investigation.  On this same date, Plaintiff appeared before Committee members and he was informed he was being retained in administrative segregation pending completion of an Institutional Gang Investigation (IGI).  Plaintiff was not allowed to appear at a hearing regarding his retention in administrative segregation.

On April 24, 2011, Defendant Ruiz placed Plaintiff in a holding cell for a formal interview regarding the possible safety concerns.  Plaintiff informed Ruiz that he did not have any safety concerns and he had no problem being housed with another inmate.  Plaintiff exercised his right to remain silent regarding an incident which took place on April 23, 2011.  In retaliation, Ruiz searched Plaintiff's cell and tossed around his property.  Plaintiff was later advised that he was being considered for validation as a gang member.

On May 2, 2011, Defendants Ruiz and A. Mayo went to Plaintiff's cell to take photographs for use in the validation process.

On May 3, 2011, Defendants Ruiz, among others, approached Plaintiff's cell to re-take the photographs.  After completion of the photographs, Plaintiff was taken to the Sergeant's office where Defendant Ruiz stood in front of Plaintiff and while he stated he did not any safety concerns, Ruiz

5

responded "I don't care about that that's not why I'm here." Plaintiff again indicated that he had nothing to say to them and requested to return to his cell, to which Ruiz stated, "I don't care whether you have nothing to say your['re] going to stand here and listen to me whether you like it or not." Then a sergeant along with Ruiz stated we will "see how you'll like it when we send officers to go raid your sister's house with guns."

On May 17, 2011, Defendants Ruiz, J.C. Garcia, and an unknown IGI officer, served Plaintiff with a validation package dated May 17, 2011. The validation was based on seven separate pieces of evidence, including several confidential memorandums and gang chronos.

On May 17, 2011, prior to interviewing Plaintiff, Defendants D.J. Ruiz and J.C. Smith concluded there was sufficient information in Plaintiff's prison file to validate him as a gang associate. An interview was subsequently conducted between Plaintiff and Defendants Ruiz and A. Mayo; however, the interview only involved providing Plaintiff a copy of the findings.

On May 18, 2011, Defendants Ruiz and Garcia and another unknown IGI correctional officer, approached Plaintiff's cell door and indicated they were there to conduct an interview and consider Plaintiff's written rebuttal. However, because Plaintiff was not assigned a staff assistance or investigative employee, he was never provided a hearing regarding his placement in administrative segregation. Plaintiff's written rebuttal was never considered, and Defendant Ruiz told Plaintiff we "will see how you like it when you['re] validated and I'll make sure you['re] kept on single cell status while you['re] in the SHU validated." Plaintiff is currently housed as single cell status because Ruiz fabricated a confidential memorandum dated May 3, 2011, which indicates that Plaintiff has safety concerns regarding the Mexican Mafia ("EME") prison gang.

On May 25, 2011, Plaintiff appeared at another classification committee review and it was decided that he could remain retained in administrative segregation pending confirmation of the gang associate label. Defendant S. Johnson refused to consider Plaintiff's rebuttal evidence. It was falsely stated that an administrative review was conducted on May 20, 2011, by Defendant Captain R.C. Garcia.

On July 20, 2011, Plaintiff requested to review his central file.

6

On July 21, 2011, Plaintiff appeared for another classification committee review. It was determined that Plaintiff would be retained in administrative segregation with a notation that due process violations had taken occurred.

On July 28, 2011, a due process violation was found regarding his validation package because Plaintiff was prevented from submitted his written rebuttal. Nonetheless, Plaintiff was retained in administrative segregation.

To date, Plaintiff has not received a necessary hearing regarding his placement in segregated housing, nor has he been provided an investigative employee or staff assistance. Instead, it has been noted that Plaintiff refuses to take advantage of the due process safeguards.

On August 8, 2011, Plaintiff filed an administrative appeal. On August 26, 2011, the appeal was investigated by an unknown IGI correctional officer.

On September 1, 2011, Defendant A. Mayo went to Plaintiff's cell and began reading from a confidential memorandum and gave him more validation information, stating "refute that."

On September 6, 2011, Defendant A. Mayo visited Plaintiff's cell indicating he wished to collect Plaintiff's rebuttal statement. Plaintiff asked Mayo why the gang validation information had changed, and Mayo denied any changes.

Plaintiff was never advised of the existence of the seven items relied upon to initially validate him as a gang associate, and he was never issued a rules violation involving gang activity. The confidential memorandums have all been fabricated by the Defendants.

As relief, Plaintiff requests a declaratory judgment, preliminary and permanent injunction, compensatory and punitive damages, costs of suit, trial by jury, and any other relief the Court deems just.

///
///
///
///
///
///

E.  **Undisputed Facts**[1]

1. Plaintiff is a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), and was incarcerated at Corcoran State Prison (CSP) during the period relevant to this litigation, April 20, 2011, through December 29, 2011.
2. In an April 20, 2011, Classification Committee meeting, Plaintiff was advised that he was being assigned administrative segregation pending an investigation into his alleged safety concerns.
3. The question of safety concerns stemmed from an April 13, 2011, incident involving Plaintiff and another inmate.
4. Plaintiff refused to sign a chrono about safety concerns, stating that he did not have any.
5. Plaintiff's issue was transferred to Defendant Ruiz for further investigation.
6. After that, Plaintiff was never allowed to appear at a hearing regarding his segregation lockup.
7. On April 24, 2011, Defendant Ruiz placed Plaintiff in a holding cell for an interview.
8. Plaintiff told Ruiz that he did not have any safety concerns and that he had no problem being housed with another inmate.
9. Plaintiff exercised his right to remain silent regarding the April 13, 2011, incident.
10. In retaliation, Defendant Ruiz searched Plaintiff's cell and tossed Plaintiff's property around the cell.
11. Shortly after that, Plaintiff was advised that he was being considered for validation as a gang member.
12. On May 2, 2011, Defendants Ruiz and Mayo went to Plaintiff's cell to take photographs for use in the validation process.

---

[1] These facts are compiled from the parties' submissions where not in dispute. Where Plaintiff has attempted to dispute Defendants' statement of fact by adding additional information, such attempt is improper as nonresponsive and does not place such statement of fact in dispute.

13. On May 3, 2011, Defendant Ruiz went back to Plaintiff's cell to re-take the photographs.
14. After taking the photographs, two non-Defendant correctional officers, Cano and Sanchez, grabbed Plaintiff by the forearms and forcefully escorted him to the Sergeant's office.
15. Plaintiff again said that he did not have any safety concerns, and asked to be taken back to his cell.
16. In response, a non-Defendant Sergeant, along with Defendant Ruiz, stated "we will see how you'll like it when we send officers to go raid your sister's house with guns."
17. On May 17, 2011, Defendants Ruiz, Garcia and an unknown officer served Plaintiff with a validation package.
18. The validation was based on seven separate pieces of evidence, including several confidential memorandums and gang chronos.
19. On May 17, 2011, Defendants Ruiz and Smith concluded, before any investigation, that there was sufficient information in Plaintiff's prison file to validate him as a gang associate.
20. On May 18, 2011, Defendants Ruiz, Garcia and the unknown IGI officer went to Plaintiff's cell to conduct an interview and consider Plaintiff's written rebuttal to the validation process.
21. Plaintiff's written rebuttal was not considered in the validation process.
22. On May 25, 2011, Plaintiff appeared at another classification committee review and it was decided that he would continue to be retained in ad-seg pending the outcome of the gang validation investigation.
23. On July 21, 2011, Plaintiff appeared for another classification committee review and it was decided that he would continue to be retained in ad0seg, with a notation to be placed in his file that due process violations had occurred during the initial investigation.

24. CSP Warden Hubbard found a due process violation regarding the gang validation package because Plaintiff had been prevented from submitting his written rebuttal to the validation package.

25. On September 1, 2011, Defendant Mayo went to Plaintiff's cell and began reading from a confidential memo, providing Plaintiff with additional gang validation information. When he was finished, Mayo told Plaintiff to "refute that."

26. On September 9, 2011, another gang validation review was conducted and the decision was made to prepare an entirely new validation package.

27. Plaintiff was never previously advised of the existence of the seven source items relied on to validate him as a gang associate, and was never issued a Rules Violation Report involving gang activity.

28. On December 29, 2011, another classification review was conducted and an indeterminate term in the Secured Housing Unit ("SHU") was imposed.

29. Plaintiff requested double cell status, but it was denied because he would not provide information regarding the incident that took place on April 13, 2011.

30. Plaintiff filed only three appeals in 2011 that went to the third level of review.

31. Appeal-COR-11-01870 was filed June 13, 2011 and appealed the decision to place Valencia in administrative segregation housing.

32. The CDCR form 602 used to initiate appeal COR-11-01870 named Defendants Ruiz and Mayo in the form Section A. Section A is designated for inmates to describe the issue being appealed and the facts supporting the appeal. The only allegation in the 602 that a Defendant acted improperly is an allegation that Ruiz prepared an invalid form 1030 that was relied on by the committee in deciding to assign Plaintiff to segregated housing. Mayo is mentioned in Section A, but specifically, and only, as a source to corroborate Plaintiff's allegations against Ruiz.

33. No Defendants except Ruiz and Mayo are named in the 602 underlying appeal COR-11-01870. The only allegation in the 602 that a defendant acted improperly is an allegation that Ruiz prepared an invalid form 1030 that was relied on by the committee

10

in deciding to assign Plaintiff to segregated housing. Mayo is mentioned in Section A but specifically, and only, as a source to corroborate Plaintiff's allegations against Ruiz.

34. Appeal-COR-11-02092 was submitted on August 8, 2011.

35. Appeal-COR-11-02092 was accepted for Third Level review on March 19, 2012.

36. Appeal-COR-11-02092 complained about Valencia's validation as a prison gang associate.

37. The CDCR form 602, Section A, initiating appeal-COR-11-02092 did not name or complaint about Defendants S. Johnson, D.J. Ruiz, J. Smith, J.C. Garcia, or A.D. Mayo.

38. Defendant J.C. Garcia's name appears in Section D of the 602 used for appeal COR-11-02092, which indicates the appeal was accepted for first level review by J.C. Garcia.[2]

39. After appeal COR-11-02092 was denied at the first level, on November 1, 2011, Plaintiff submitted Section D of the form 602. Section provides the inmates an opportunity to have a second review of the issue identified in Section A and to explain why the inmate disagrees with the first level decision.

40. After appeal COR-11-02092 was denied at the second level, Plaintiff submitted Section F of the form 602 for review at the third level. Section F provides the inmate an opportunity to have a third review of the original appeal and to explain why the inmate disagrees with the second level decision.

41. Section F of the 602 used for appeal COR-12-02902 names Defendants Mayo and Garcia.

42. Appeal COR-12-02596 appealed the cancellation of an earlier appeal, number COR-7-12-00570.

---

[2] Plaintiff attempts to dispute this fact by stating that the appeal was assigned to J.C. Garcia for the purposes of investigating the matters within the appeal, and on May 17, 2011, J.C. Garcia, among others, served Plaintiff with a validation package. However, these additional factual contentions do not dispute the fact set forth by Defendants that J.C. Garcia's name appears in Section D of appeal COR-11-02092 as accepted by him for first level review.

43. Appeal COR-12-02596 did not complain of or name Defendants S. Johnson, D.J. Ruiz, J. Smith, J.C. Garcia, or A.D. Mayo.

**F.     Parties' Positions**

Defendants argue that Plaintiff failed to exhaust the administrative remedies as to his due process claim against Defendants Johnson, Mayo, Garcia and Smith, and his retaliation claim against Defendant Ruiz.

Plaintiff argues that he exhaust the administrative remedies as to both claims against all Defendants, and even if the Defendants were not specifically named in the appeals the supporting documents attached to his inmate appeal was sufficient to identify each individual.

**G.     Findings**

Defendants bear the burden of demonstrating the existence of an available administrative remedy and Plaintiff's failure to exhaust that available remedy. Albino, 747 F.3d at 1172. Here, there is no dispute that CDCR has an administrative remedy process for inmate grievances which is initiated by submitting a CDCR Form 602 "Inmate/Parolee Appeal" within thirty calendar days (1) of the event or decision being appealed, (2) upon first having knowledge of the action or decision being appealed, or (3) upon receiving an unsatisfactory departmental response to an appeal filed. Cal. Code Regs., tit. 15, §§ 3084.2(a), 3084.8(b)(1) (quotation marks omitted).[3]

The Supreme Court held in Jones v. Bock, that a prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). In this case, contrary to Plaintiff's contention, the regulations governing CDCR's grievance process were significantly revised effective January 28, 2011, and now provide that "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602." Cal. Code Regs. tit. 15, § 3084.1(b) (2011). The revised regulations require inmates to identify by name and title or position each staff member alleged to be

---

[3] The regulations were amended effective January 28, 2011. However, both the current regulations and the prior regulations provided the same general four-level administrative remedy process. The four level process prior to the amendments effective on January 28, 2011, was described in § 3084.5.

1  involved in the action or decision being appealed, along with the dates each staff member was
2  involved in the issue being appealed.  Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2011).  If the inmate
3  does not have this information, he must provide any other available information that would assist the
4  appeals coordinator in identifying the staff member.  Id.  The revised regulations were in effect when
5  the alleged constitutional violations occurred and when Plaintiff submitted his related appeals relevant
6  to this action.

    1.  Retaliation Claim Against Defendant Ruiz

    This action is proceeding on Plaintiff's claim that Defendant Ruiz retaliated again him by searching his cell and property and later validated as a gang member.

    In Plaintiff's appeal COR-11-01870, Plaintiff grieved at the first level of review that he was being improperly retained in the administrative segregation unit based on an invalid claim that his safety was in jeopardy.  Plaintiff requested to be returned to the general population with double cell status.  (ECF No. 46-4, Ex. 2.)

    After he received his first level response, Plaintiff added his claim that he was retaliated against Defendant Ruiz who improperly searched his cell after Plaintiff exercised his right to remain silent in response to an interview regarding his gang validation status, at the second level of review.  The appeal response at the third level of review noted that Plaintiff had added new issues and Plaintiff was advised that the issues would not be addressed since it was not appropriate to expand the appeal beyond the original issue.  Prison officials advised Plaintiff that the appeal was limited to the complaints originally grieved.  Under the California Code of Regulations, an inmate is required to present evidence in an appeal that he had attempted to resolve his grievance at the level below.  In other words, the addition of Plaintiff's retaliation claim against Defendant Ruiz at his request for third level review did not exhaust such retaliation claim because new claims are not permitted as the appeal moves through the levels of review.  See Sapp, 623 F.3d at 825 (concluding that it was proper for prison official to "decline[] to consider a complaint about [prisoner's] eye condition that he raised for the first time in a second-level appeal about medical care for a skin condition."); Dawkins v. Butler, 2013 WL 2475870, at *8 (S.D. Cal. 2013) (a claim made for the first time in plaintiff's request for third level review was insufficient to exhaust the issue where it was not included in the original

13

1 appeal). Thus, Appeal COR-11-01870 did not serve to exhaust Plaintiff's retaliation claim against
2 Defendant Ruiz.

3 Plaintiff's appeal COR-11-02092, on its face does not allege retaliation by Defendant Ruiz, let
4 alone name any individuals in Section A of the appeal. (ECF No. 46-4, Ex. 3.) R. Briggs declares that
5 no other appeals were filed by Plaintiff in which he alleged that Defendant Ruiz retaliated against him.
6 (ECF No. 46-4, Decl. of R. Briggs at ¶ 6.) Thus, Plaintiff failed to exhaust his administrative remedies
7 as to his retaliation claim against Defendant Ruiz, and Defendant Ruiz's motion for summary
8 judgment for failure to exhaust the administrative remedies for this claim should be granted.

9     2.    <u>Due Process Claim Against Defendants Mayo, Garcia, Johnson and Smith</u>

10 In order to determine if Plaintiff properly exhausted his claims against Defendants Mayo,
11 Garcia, Johnson and Smith, the Court must identify the claims upon which Plaintiff is proceeding on
12 against these Defendants. As stated in the Court's February 24, 2014, Findings and Recommendation
13 (adopted in full on April 18, 2014), Plaintiff's complaint alleges that Defendants Lieutenant Ruiz, A.
14 Mayo, J.C. Garcia, J.C. Smith, and S. Johnson, participated in the initial and subsequent decisions and
15 process to validate Plaintiff by depriving him of his federal due process rights.[4] Plaintiff states a
16 cognizable due process claim as to the above-named Defendants based on the allegations that he was
17 not afforded a hearing and opportunity to present his views to the critical decision makers concerning
18 his validation and related security placement, and the determination is not based on "some evidence"
19 to support the source items that were relied upon to validate him as an EME associate. (ECF Nos. 19,
20 22.)

21     **a.**    **Appeal COR-12-02596**

22 It is undisputed that Appeal COR-12-02596 did not grieve any actions by about Defendants,
23 and therefore this appeal did not exhaust the administrative remedies as to any of the Defendants.
24 Accordingly, it is undisputed that this appeal did not exhaust the administrative remedies against
25 Defendants on Plaintiff's due process claims.
26 ///
27
28 [4] Defendant Ruiz does not move for summary judgment for failure to exhaust the due process claim against him.

14

### b. Appeal COR-11-01870

Appeal COR-11-01870 alleged that Defendant Ruiz violated Plaintiff's due process rights in the gang validation process by submitting an invalid form 1030. Defendants Ruiz and Mayo are the only Defendants named in this appeal. In Section A of the original appeal, Plaintiff named only Defendant Ruiz as the individual responsible for the alleged violation during the gang validation process. Plaintiff did not allege that Defendant Mayo violated his rights. Indeed, in Section A of this appeal, Plaintiff stated the following:

> On 5-25-11 I appeared before ICC for my 30 day review … where ICC decided to retain me here in ASU for another (60) days pending my possible validation…now the main reason I am being held in ASU is due to IGIG assumes I have safety concerns with Southern Mexican prison population and the EME prison gang. I stated to IGI that I did not have safety concerns. IGI is using an invalid 1030 to substantiate their position. This invalid 1030 authored by Lieutenant D.J. Ruiz on 5/3/11 was in fact "discredited" by IGI officer Mayo in August of 2010 and I was placed back in general population. Once again I do not have any safety concerns requesting [sic] double cell clearance thank you for your time.

(ECF No. 46-4, Ex. 2.)

Plaintiff admits that appeal COR-11-01870 alleges only that Ruiz submitted a false document, and he admits Mayo was named only a source to corroborate his allegations Ruiz. (ECF No. 49 at 17 ¶ 32, Plaintiff stated it is undisputed that "Mayo is mentioned in section A, but specifically, and only, as a source to corroborate Plaintiff's allegations against Ruiz.") Plaintiff also concedes that the only allegations of wrongdoing in this appeal were against Defendant Ruiz. (Id. at ¶ 33, Plaintiff acknowledged in relation to Appeal COR-11-01870 as undisputed that "the only allegation in the 602 that a Defendant acted improperly is an allegation that Ruiz prepared an invalid form 1030 that was relied on by Committee in deciding to assign Plaintiff to segregated housing. Mayo is mentioned in section A but specifically, and only, as a source to corroborate Plaintiff's allegations against Ruiz.") Accordingly, Appeal COR-11-1870 did not serve to exhaust Plaintiff's due process claims Defendants Mayo, Garcia, Johnson and Smith. See Albino v. Baca, 747 F.3d at 1166 (if undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56). Accordingly, this appeal did not serve to exhaust Plaintiff's due process claims against Defendants Mayo, Garcia, Johnson and Smith.

### c. Appeal COR-11-02092

Appeal COR-11-02092 accuses Defendant Ruiz of a due process violation by submitting a fraudulent document in the classification proceeding.[5] Defendants have met their burden of proof in proving this appeal did not exhaust the due process claims against Defendants Mayo, Garcia, Johnson and Smith.  The burden now shifts to Plaintiff to present evidence showing that there is something in this particular case that overcomes the evidence submitted by Defendants.

Plaintiff contends, incorrectly, that he was not required to name each individual staff member and that Defendants Mayo and Garcia were named and identified in Section D of this appeal.  Initially, and contrary to Plaintiff's assertion, Defendant J.C. Garcia's name appears in the appeal but only as the person accepted the appeal for review. (Citation.)  In addition, although Defendants Mayo and Garcia were named and identified in Section D of this appeal, this is insufficient to exhaust the administrative remedies under the current regulations.  As stated above, Plaintiff was required to name each defendant in his initial appeal as well as to describe the actions or inactions of each defendant that Plaintiff was appealing.  The fact that Plaintiff waited until the second level of review to add the claims against Defendants Mayo and Garcia does not serve to exhaust the claims against them.  See Cal. Code. Regs. tit. 15, § 3084.1(b) (information or people later named by the inmate that were not included in the originally submitted 602 form are not considered exhausted).  Plaintiff has not met his burden of proof in defeating the evidence submitted by Defendants.  See Williams v. Paramo, 775 F.3d at 1191 (after defendants meet their burden of proof that there is an available administrative remedy and the prisoner did not exhaust that remedy, the burden shifts to plaintiff to show otherwise); Hilao v. Estate of Marcos, 103 F.3d 767, 778 n. 5 (9th Cir. 1996) (same).

As to Defendants Johnson and Smith, it is undisputed these Defendants were not named in the appeal and there is insufficient factual information to place prison officials on notice that Plaintiff sought relief based on their individual involvement in the gang validation process.  Plaintiff's claim that attachment of the supporting documents was sufficient to identify each individual is not

---

[5] Defendant Ruiz was identified by his title Institutional Gang Investigator (IGI).

persuasive because merely submitting several documents to an inmate appeal in order to identify and set forth the claims for relief does not meet the requirements of the applicable regulations.  See Cal. Code Regs. tit. 15, § 3084.2(a)(4) ("The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitted the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.")  As with Defendants Mayo and Garcia, Plaintiff has failed to meet his burden of proof in defeating the evidence submitted by Defendants, and this appeal does not serve to exhaust the claims against Defendants Johnson and Smith.

## II.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust the available administrative remedies as to Plaintiff's retaliation claim against Defendant Ruiz and Plaintiff's due process claims against Defendants Mayo, Garcia, Johnson and Smith be GRANTED.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 7, 2015**

UNITED STATES MAGISTRATE JUDGE